UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

BARRY CALHOUN
1030 Rhodes Villa Avenue
Delray Beach, Florida 33483

      Plaintiff,

  v.

HAF ARCHITECTS, LLC
5397 Bluebird Point, Rd.
Manitowish Waters, Wisconsin 54545

      Defendant.

Case No. 25-cv-752

**JURY TRIAL DEMANDED**

---

### COMPLAINT

---

### PRELIMINARY STATEMENT

1. This action alleges fraud, breach of contract, and tortious interference pertaining to the contractual relationship between Plaintiff, Barry Calhoun, and Defendant, HAF Architects, LLC. Defendant committed fraud by: (1) fraudulently representing to Plaintiff that the payment terms within the contract were based on an hourly rate and then asserting a 7% fee based on the cost of construction not found within the contract; and (2) billing/overbilling for work not performed. After termination of the contract, Defendant tortiously interfered with Plaintiff's contracts with other parties by sending cease and desist letters to other parties engaged by Plaintiff to perform work on the home and threatening to place a lien on the property, despite the fact Plaintiff had been granted an implied license to the plans he requested and paid for. Additionally, Plaintiff seeks a declaratory judgment determining that Plaintiff owns an implied license for the plans and a declaratory judgment determining that he owes no additional money to Defendant.

1

## JURISDICTION AND VENUE

2. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) as the parties to this action are completely diverse and the amount in controversy is in excess of $75,000.

3. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant has substantial and systematic contacts in this District.

## PARTIES

4. Plaintiff, Barry Calhoun, is an adult male resident and citizen of the State of Florida with a domicile located at 1030 Rhodes Villa Avenue, Delray Beach, Florida 33483.

5. Defendant, HAF Architects, LLC, is a limited liability company registered in the State of Minnesota and doing business in the State of Wisconsin, with a principal office address of 5191 HWY 51, Manitowish Waters, WI 54545 and a registered agent of Michael Hoefler located at 5397 Bluebird Point Road, Manitowish Waters, Wisconsin 54545.

6. Upon information and belief, Defendant's members are citizens of the State of Wisconsin.

7. Defendant is an architectural firm.

8. Plaintiff engaged Defendant to provide architectural work related to a property in Boulder Junction, Wisconsin (the "property") on or about June 19, 2023.

## FACTUAL ALLEGATIONS

9. On or about June 19, 2023, Plaintiff signed and entered a contract with Defendant titled "Agreement between Client and Architect" (the "Agreement"). A true and correct copy of this document is attached hereto and marked as "Exhibit A."

10. The Agreement contains no total project cost.

11. The Agreement only establishes only the following fee schedule: "($175/hour principal architects / $100/technical times number of unpaid hours)."

12. The Agreement provides the following Project Summary: "Develop an overall master site plan for future expansion addressing growth of family and long-term goals. Provide full architectural design phases for main home. Evaluate existing footprint use and expansion vs new build at 10590 Labrador Trail. HAF Project #23-002"

13. No part of the Agreement includes or contemplates interior design services.

14. No part of the Agreement includes or contemplates the copyright to the master site plans.

15. The Agreement relays an intent to distribute the master site plans to other entities for purposes of completing the project, including, but not limited to contractors, engineers, surveyors, interior designers, and environmentalists.

16. The Agreement states, in part, that "The Client has the right to cancel architectural services at any time for cause or for the Client's convenience and will be responsible only for payment of services performed up to the date of cancellation," and that "Any cancellation of architectural services shall be done in writing. The Client shall give at least two (2) weeks advance notice prior to cancellation."

17. On or about June 25, 2025, Defendant distributed the master site plans to Plaintiff through a link to a Dropbox folder containing exterior drawings for the home to Plaintiff via e-mail.

18. On June 25, 2025, Plaintiff sent a return e-mail to Defendant asking that Plaintiff's interior designers be added to the Dropbox so that they could access the files.

19. In response Defendant asked "who are they?"

3

20. In response, Plaintiff responded that "Our designers. Thanks."

21. Defendant responded that "If you are using them for interiors, we can certainly consider sending them floorplans, kitchen elevations etc. once those are complete. But we are not at that point."

22. Plaintiff responded that: "I need them to see exterior drawings. That I have paid for. Please provide them. If that's a problem for some reason that I don't understand, then please provide the work product completed to this point and I will terminate our agreement. I'm shocked this is an issue."

23. Defendant, upon information and belief, refused to add Plaintiff's designers to the Dropbox link.

24. Prior to the aforementioned interaction, Plaintiff had paid each of Defendant's invoices in the following amounts:

- October 13, 2023        $ 3,000.00
- March 5, 2024           $ 6,300.00
- May 9,2024              $ 7,700.00
- October 7, 2024         $12,500.00
- June 13, 2025:          $10,000.00
- June 13, 2025           $10,050.00

25. The amounts set forth in the foregoing paragraph total $49,550.00, which amounts to approximately 283 hours in work allegedly performed by Defendant at a rate of $175 per hour.

26. On or about June 13, Plaintiff met with Michael Hoefler, Defendant's primary architect, in person, and provided two checks to him in the amounts of $10,000.00 and $10,500.00.

4

At that time Plaintiff asked if all of his bills were paid in full. Defendant informed Plaintiff at that time that all work performed by Defendant to that point had been paid in full.

27. Because Defendant refused to add Plaintiff's designers to the Dropbox link, and provided no reason for their refusal, Plaintiff elected to undertake his termination rights under the Agreement.

28. On June 26, 2025, Plaintiff transmitted a written termination notice to Defendant, effective immediately under the terms of the Agreement. A true and correct copy of this written termination notice is attached hereto and marked as "Exhibit B."

29. Upon information and belief, and based on the representations of Defendant, as of the date of Plaintiff's termination notice, he had paid all invoices and had no outstanding balance with Defendant.

30. On July 18, 2025, following Plaintiff's transmission of his termination notice to Defendant, Defendant sent an e-mail to Plaintiff containing an invoice allegedly created on June 26, 2025, for $40,750.00, alleging that Defendant had performed an additional 42 hours of principal architectural work at $175/hour between November 1, 2024 and June 25, 2025 which allegedly not been previously billed, and seeking a fee of 7% of the construction cost of the proposed residence (which has not been built) of $54,750.00. A true and correct copy of this invoice is attached hereto and marked as "Exhibit C."

31. No part of the Agreement affords Defendant the right to seek a fee of 7% of the construction cost from Plaintiff.

32. At no time when discussing retention of Defendant did Defendant ever make Plaintiff aware of the alleged 7% fee.

33. As part of Defendant's July 18, 2025, e-mail marked as Exhibit C, Defendant also sent an Invoice Summary to Plaintiff. It indicated that Plaintiff's account was paid in full, save for the newly fabricated August 26, 2025, invoice (invoice 2128). Defendant's own Invoice Summary reflected the following payments from Plaintiff:

| Invoice # | Date | Residence | Garage | Paid |
|---|---|---|---|---|
| 2089 | 9/1/2023 | 3,000.00 | | X |
| 2092 | 10/1/2023 | 2,500.00 | | X |
| 2101 | 1/1/2024 | 6,300.00 | | X |
| 2106 | 4/1/2024 | 5,200.00 | | X |
| 2108 | 8/21/2024 | 5,200.00 | 7,750.00 | X |
| 2113 | 11/1/2024 | 12,550.00 | 7,500.00 | X |
| 2128 | 6/26/2025 | 7,350.00 | 54,750.00 | Attached w/credit |

A true and correct copy of this summary is attached hereto and marked as "Exhibit D."

34. Following its transmission of the fabricated invoice discussed above, Defendant began contacting contractors working with Plaintiff at the property, as well as Vilas County Zoning & Planning, making inquiries about construction at Plaintiff's property, and seeking to determine the identity of contractors working on the project.

35. Defendant's contacts and interference have had a chilling effect, and disrupted relationships between Plaintiff and his contractors.

36. On or about August 12, 2025, Defendant sent an e-mail to Plaintiff which apparently purported to be a Notice of Intent to File a Lien Claim. A true and correct copy of this e-mail is attached hereto and marked as "Exhibit E."

37. The purported notice of intent is not legally sufficient.

38.　The purported notice includes a copy of the Agreement, which does not contain the 7% penalty invoiced by Defendant.

39.　There is no basis in law, equity, or otherwise for Plaintiff to claim a 7% fee.

40.　As of June 13, 2025, Defendant informed Plaintiff that all work which Defendant had performed as of that date had been paid in full.

41.　There is no basis for Defendant to seek additional amounts for work performed after June 13, or to seek to file a lien against Plaintiff's property.

42.　As of the date of this filing, Plaintiff has not been personally served a copy of any notice of intent to file a lien as required by Wisconsin's statues.

## **FIRST CLAIM FOR RELIEF: INTENTIONAL MISREPRESENTATION**

43.　Plaintiff realleges and incorporates by reference herein paragraphs 1 through 42 of this Complaint.

44.　The Agreement between Plaintiff and Defendant asserts that Defendant was to be paid on an hourly basis.

45.　At no point in time did Defendant inform Plaintiff that in addition to the hourly rate for work performed Defendant anticipated and required a payment of 7% of the total value of the project in addition to the hourly rates described in the contract.

46.　Defendant intentionally misrepresented to Plaintiff that in hiring Defendant, Plaintiff would only be required to pay an hourly rate for Defendant's services.

47.　Defendant is now seeking a payment in the amount of $54,750.00, despite the fact Plaintiff has already paid Defendant at least $49,550 for services rendered.

48. As a result of Defendant's intentional misrepresentation, Plaintiff has incurred damages, including unnecessary expenses and loss of use of his property due to delays in construction caused by Defendant's actions.

## SECOND CLAIM FOR RELIEF: INTENTIONAL MISREPRESENTATION

49. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 48 of this Complaint.

50. Defendant has falsely asserted via invoices that it has spent approximately 325 hours at a rate of $175 per hour designing a standard master site plan for Plaintiff.

51. Defendant has not performed 325 hours of work on the master site plan.

52. Defendant knew that it had not performed 325 hours of work on the master site plan.

53. Defendant made the representation that it had performed 325 hours of work on the master site plan with intent to deceive and induce Plaintiff to act to Plaintiff's detriment.

54. Plaintiff relied on and was deceived by the misrepresentations in Defendant's invoices and paid invoices for work that was not performed by Defendant.

55. As a result of Defendant's intentional misrepresentation, Plaintiff has suffered loss by paying invoices that fraudulently relayed the amount of time spent by Defendant on the project.

## THIRD CLAIM FOR RELIEF: TORTIOUS INTERFERENCE

56. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 55 of this Complaint.

57. Plaintiff had contracts with third parties, including surveyors and other contractors.

58. Defendant intentionally interfered with those relationships by erroneously asserting copyright ownership of the master site plans and asserting a lien on the property, despite the fact Plaintiff had compensated Defendant in full.

59. That interference caused significant delays in the construction contemplated by Plaintiff, resulting in loss of use and other damages.

60. Defendant had no justification or privilege to interfere with Plaintiff's contracts with third parties.

### FOURTH CLAIM FOR RELIEF: DECLARATORY JUDGMENT (COPYRIGHT)

61. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 60 of this Complaint.

62. Plaintiff requested that the master site plans be distributed.

63. Defendant delivered the master site plans to Plaintiff.

64. Defendant intended that Plaintiff would copy and distribute the master site plans.

65. Pursuant to FED. R. CIV. P. 57, Plaintiff seeks an order from this Court that Plaintiff owns an implied license in the ownership of the master site plans.

### FIFTH CLAIM FOR RELIEF: DECLARATORY JUDGMENT (CONTRACT)

66. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 65 of this Complaint.

67. Plaintiff paid all invoices due and owing to Defendant on or about June 13, 2025.

68. Defendant represented to Plaintiff during that interaction that Plaintiff had no outstanding invoices with Defendant.

69. Defendant's subsequent invoices fraudulently sought additional money not contemplated by contract and that falsely relayed the amount of time Defendant spent on the project.

70. Pursuant to Fed. R. Civ. P. 57, Plaintiff seeks an order from this Court that he owes no additional money to Defendant and that Defendant has no right to assert a lien on the property.

**WHEREFORE**, it is respectfully prayed that this Court grant the following relief:

1. Issue an Order that Defendant intentionally misrepresented the terms of the Agreement to Plaintiff and ordering Defendant to pay damages to Plaintiff for overpayments issued, loss of use of his property, and other damages incurred due to Defendant's intentional misrepresentations;

2. Issue an Order that Defendant tortiously interfered with Plaintiff's contracts with third-parties and ordering Defendant to compensate Plaintiff for the damages associated with that interference;

3. Declare that Plaintiff has an implied license to the copyright of the master site plans;

4. Declare that Plaintiff has paid all invoices due and owing to Defendant and does not owe any additional money to Defendant;

5. Grant Plaintiff attorneys' fees, costs, and disbursements; and

6. Grant Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES**

Dated this 5th day of September, 2025.

        **CRIVELLO, NICHOLS & HALL, S.C.**
        Attorneys for Barry Calhoun

        By: *Electronically signed by Henry E. Koltz*
            HENRY E. KOLTZ
            State Bar No.: 1032811
            MATTHEW J. TOBIN
            State Bar No.: 1097545

**Post Office Address:**
710 N. Plankinton Avenue, Suite 500
Milwaukee, Wisconsin 53203
Telephone: (414) 271-7722
Email: hkoltz@crivellolaw.com
       mtobin@crivellolaw.com